UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH SCHLUSSEL

Plaintiff,

v.

CITY OF DEARBORN HEIGHTS, ET AL.

Defendants.

_____/

Case No. 17-cv-11546

UNITED STATES DISTRICT COURT
JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
[4][9]**

**I. INTRODUCTION**

Presently before the Court is Defendant Gary T. Miotke's Motion to
Dismiss and Defendants City of Dearborn Heights, Dearborn Heights Police
Department, Dan Paletko, and Lee Gavin's Motion to Dismiss. All
Defendants seek to dismiss the nine counts that Plaintiff has filed against
them. For the reasons that follow, the Court will grant Defendant Miotke's
and Defendants Paletko, Gavin, City of Dearborn Heights, and Dearborn
Heights Police Department's Motions to Dismiss. Counts one, four, eight,
and nine are dismissed without prejudice. Counts two, three, five, six, and
seven are dismissed with prejudice.

## II. FACTUAL BACKGROUND

This suit originates from a request by Plaintiff Deborah Schlussel for booking photographs and videos that the Defendants denied. On June 8, 2015, The City of Dearborn Heights ("the City") promulgated a "Policy Regarding Booking Procedure for Females Wearing a Hijab, Burka, or Other Religious Head Covering" ("Hijab Policy"). Dkt. No. 1-7, pg. 2 (Pg. ID 44). The policy states that the City will not take booking photographs of women who wear hijabs or burkas with their head coverings off. *Id.* at 2–3 (Pg. ID 44–45). If there are any identifying marks present, the officer taking the photographs will photograph the identifying mark only. *Id.* On March 24, 2016, Plaintiff sent the Dearborn Heights Police Department a request for information pursuant to the Michigan Freedom of Information Act (FOIA). Dkt. No. 1, pg. 5 (Pg. ID 5). Plaintiff requested booking photos and videos of an arrestee, Ms. Kazan, without her hijab on, which were taken before the City enacted the Hijab Policy. *See id.* On April 22, 2016, Defendant Gary T. Miotke wrote Plaintiff on behalf of the City of Dearborn Heights, granting in part and denying in part the request, and charging Plaintiff twenty-four dollars for the information. Pl.'s Ex. B. Miotke's denial was pursuant to the privacy exemption of the Michigan FOIA. *Id.* Plaintiff appealed the decision to partially deny her request on October 16, 2016. Pl.'s Ex. E. In her appeal,

Plaintiff cited the November 14, 2014 request of Mr. Amir Makled, an Arab Muslim male born in Lebanon, for booking photos and videos of the same arrestee that was granted in its entirety for fifteen dollars. *Id.* The City of Dearborn Heights made a final determination to deny her request on November 16, 2016. Pl.'s Ex. F.

Plaintiff then filed a complaint against the City of Dearborn Heights, et al., including Miotke, on May 15, 2017. *See* Dkt. No. 1. Plaintiff alleged nine counts against all of the defendants. Count I alleges a violation of the Michigan Freedom of Information Act by denying Schlussel access to all of the booking photos she requested. Dkt. No. 1, pg. 9 (Pg. ID 9).Count I also alleges that the Hijab Policy adopted by Defendants violates the Michigan FOIA. *Id.* at 11 (Pg. ID 11). Count II is a 42 U.S.C. §1983 Equal Protection claim alleging that Defendant denied her requests because of her gender, Jewish ethnicity/religion, and United States national origin. Dkt. No. 1, pg. 13 (Pg. ID 13). Count III alleges a conspiracy by all of the Defendants to deprive Plaintiff of her Equal Protection rights. Dkt. No. 1, pg. 15 (Pg. ID 15). Count IV alleges a violation of the Michigan Elliott-Larsen Civil Rights Act, which states, "a person shall not deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of a place of public accommodation or public service

because of religion, race, color, national origin, age, sex, or marital status."
Dkt. No. 1, pg. 16 (Pg. ID 16). Count V alleges that Defendant violated the
Establishment Clause of the United States Constitution by denying her the
requested material and by adopting a policy exempting Muslim women from
FOIA laws. Dkt. No. 1, pg. 17 (Pg. ID 17). Count VI alleges Defendants
violated Plaintiff's federal First Amendment rights of free speech and
freedom of the press. Dkt. No. 1, pg. 18 (Pg. ID 18). Count VII alleges that
Defendants violated Plaintiff's federal Freedom of Religion rights by
denying her request for materials but granting the request to a party of the
Muslim faith. Dkt. No. 1, pg. 19–20 (Pg. ID 19–20). Counts VIII and IX
allege that Defendants violated the Equal Protection Clause of the Michigan
Constitution by denying Plaintiff's request for materials. Dkt. No. 1, pg. 21–
24 (Pg. ID 21–24).

Defendant Miotke filed a motion to dismiss all nine counts against
him on July 17, 2017. *See* Dkt. No. 4. Plaintiff opposed the motion and
responded on August 7, 2017 conceding that Count I should be dismissed.
*See* Dkt. No. 6, pg. 5 (Pg. ID 106). Defendant replied on August 14, 2017.
*See* Dkt. No. 7. Defendants City of Dearborn Height, Dearborn Heights
Police Department, Dan Paletko, and Lee Gavin filed a motion to dismiss on
August 24, 2017. Dkt. No. 9. Plaintiff responded on September 14, 2017,

opposing the motion, but conceding that Count I should be dropped against Paletko and Gavin, and Defendant Dearborn Heights Police Department should be dismissed. Dkt. No. 11, pg. 4 (Pg. ID 175). Defendants replied on September 20, 2017. Dkt. No. 12.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss. The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). The facts need to make it more than "merely possible that the defendant is liable; they must make it plausible." *Id.* "Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Id.* A claim will be dismissed "if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Inst., LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

# IV. Discussion

## Federal Law Claims

## Defendant Dearborn Heights Police Department

Michigan law states that a municipal police department is a "creature of the municipality." *See Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994). Therefore, a suit against a municipal police department is a suit against the municipality itself. Plaintiff concedes that Defendant Dearborn Heights Police Department is an improper defendant. Dkt. No. 11, pg. 4 (Pg. ID 175). The Court dismisses all of the federal claims against Defendant Dearborn Heights Police Department.

## Count II

Count II is a 42. U.S.C. § 1983 claim that alleges Defendants denied Plaintiff Equal Protection of the law under the United States Constitution based on her gender as a woman, ethnicity/religion as Jewish, and nationality as a United States national. Dkt. No. 1, pg. 13 (Pg. ID 13).

*City of Dearborn Heights*

"To prevail in a 42 U.S.C. § 1983 suit against a municipality, a litigant must show a constitutional deprivation that was due to a municipal

policy or custom." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Props. V. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995) (quoting *Henry v. Metro. Sewer Dist.*, 992 F.2d 332, 341 (6th Cir. 1990)). An Equal Protection claim must also show that differential treatment resulted from discriminatory intent. *See Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 972 (E.D. Mich. 2016).

Here, Plaintiff's complaint and attached exhibits fail to allege sufficient facts that show Defendants had discriminatory intent. Plaintiff's complaint states several times that Defendants discriminated against her based on her gender/sex, ethnicity/religion, and national origin, without stating any facts that support discriminatory intent. In paragraph 51 of her complaint, Plaintiff states that "Defendants, acting under color of law, intentionally singled out and treated Plaintiff less favorably than a similarly situated male Muslim of Arabic descent." Dkt. No. 1, pg. 12 (Pg. ID 12). In paragraph 57 of her complaint, Plaintiff states that "Defendants targeted Plaintiff for discriminatory and arbitrary treatment on account of her

sex/gender, religion, ethnicity, and national origin, thereby infringing on her fundamental rights." Dkt. No. 1, pg. 13 (Pg. ID 1). In paragraph 58 of her complaint, Plaintiff states that "Defendants granted the FOIA rights . . . when it granted a similarly situated male Muslim of Arabic descent . . . the same FOIA materials it denied to Schlussel and manufactured a pretextual 'right to privacy' which does not exist, as an excuse to deny Schlussel the FOIA materials." *Id.* In paragraph 60 of her complaint, Plaintiff states, "Defendants treated Schlussel differently than Mr. Makled, despite her FOIA request being virtually identical to his, because unlike him, she is female not male; Jewish not Arab and Muslim; and born in the United States, not . . . Lebanon—thus, depriving her of her Constitutionally protected rights to equal treatment and equal protection under the law." *Id.* at pg. 14 (Pg ID 14). In paragraph 61 of her complaint, Plaintiff states that "Defendants' FOIA policy and discriminatory FOIA responses to the same requests for the same information discriminates against, violates, and deprives Plaintiff and the class of similarly situated non-male, non-Muslim, native-born Americans of equal privileges of obtaining information under FOIA, based on their sex/gender, religious, ethnic, and national origin statuses" *Id.* Besides these assertions, Plaintiff otherwise presents no facts to plausibly show that Defendants intended to discriminate against Plaintiff

based on her protected identities. Plaintiff makes no claims of any statements or conduct directed towards her by Defendants that would suggest discriminatory intent. The exhibits Plaintiff attached to her complaint do not make any statements that suggest discriminatory intent. *See* Pl.'s Exs. B & F.

Plaintiff attempts to show intent by alleging disparate treatment between her request and the request of Mr. Makled. To prove disparate treatment, a movant must show that she was "treated different than those similarly situated in all material respects." *Loesel v. City of Frankenmuth*, 692 F. 3d 452, 462 (6th Cir. 2012). However, Plaintiff fails to show that she was similarly situated to Mr. Makled. Mr. Makled was the Ms. Kazan's hired lawyer who represented her in her suit against the City. Dkt. No. 9, pg. 23 (Pg. ID 156). Plaintiff was a journalist with no connection to Ms. Kazan at the time she made her request. Mr. Makled made his request to the City on November 5, 2014. *See* Pl.'s Ex. C. Plaintiff made her request to the City on March 24, 2016. *See* Pl.'s Ex. A. Plaintiff's request came after the City had enacted the Hijab Policy on June 8, 2015, and Mr. Makled's request came before the City enacted the Hijab Policy. Therefore, Plaintiff was not similarly situated and there are plausible reasons besides discriminatory intent—like the Hijab Policy and the privacy exemption of the Michigan

FOIA—that the City partially denied Plaintiff's request for information. Further, this Court has previously noted that "the mere existence of disparate treatment . . . does not furnish adequate basis for an inference that the discrimination was impermissibly motivated." *Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 973 (E.D. Mich. 2016) (quoting *Soto v. Flores*, 103 F.3d 1056, 1067 (1st Cir. 1997)).

For the above reasons, the Court finds that Plaintiff's Equal Protection claim, Count II, fails against the City of Dearborn Heights because it does not allege sufficient facts to support an inference of discriminatory intent. Count II is therefore dismissed against the City.

*Defendants Miotke, Paletko, and Gavin*

For the reasons discussed above for the City of Dearborn Heights, Plaintiff's Count II is dismissed against Defendants Miotke, Paletko, and Gavin. The Court finds that Plaintiff did not allege sufficient facts to support a showing of discriminatory intent.

Count II is also dismissed against these individual defendants under the doctrine of qualified immunity. There is a two-part test to determine if a defendant is entitled to qualified immunity. *Sumpter v. Wayne County*, 868 F.3d 473, 480 (6th Cir. 2017). Courts ask "whether the facts alleged or

shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the incident." *Id.* To be clearly established, "the case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Saylor v. Bd. Of Educ. Of Harlan Cty.*, 118 F.3d 507, 515 6th Cir. 1997)).

Here, the Court finds that Plaintiff does not allege facts that make out a violation of equal protection. As discussed above, Plaintiff's complaint does not sufficiently allege a violation of equal protection because Plaintiff does not show Defendants acted with discriminatory intent. Nor does Plaintiff show that she and Mr. Makled were similarly situated. Defendants Miotke, Paletko, and Gavin also did not violate a clearly established right. This suit stems from distinctive facts that implicate the Hijab Policy, which is a policy unique to the City of Dearborn Heights. Case law does not establish that the partial denial of Plaintiff's FOIA request was clearly a violation of Equal Protection. Case law has not yet addressed this specific issue, so officials could not be on notice that their actions would violate the Equal Protection Clause.

In conclusion, Plaintiff has failed to allege sufficient facts against Miotke, Paletko, and Gavin to establish there was a violation of Equal Protection. These defendants are also immune from suit under the doctrine of qualified immunity.

**Count III**

In Count III, Plaintiff alleges a Conspiracy to Deprive Equal Protection Rights Guaranteed by the United States Constitution, in violation of 42 U.S.C. § 1985(3). Dkt. No. 1, pg. 15 (Pg. ID 15). A plaintiff "cannot succeed on a conspiracy claim [if] there was no underlying constitutional violation that injured her." *Rapp v. Dutcher*, 557 Fed. App'x 444, 450 (6th Cir. 2014) (quoting *Wiley v. Oberlin Police Dep't*, 330 Fed. App'x 524, 530 (6th Cir. 2009)). Because the Court finds that the Plaintiff does not have a viable Equal Protection Claim, her Conspiracy to Deprive Equal Protection claim must also fail. The Court dismisses Count III as to all Defendants.

**Count V**

Count V alleges that the Defendants violated the Establishment Clause of the United States Constitution by denying in part Plaintiff's FOIA request for information and granting the same request to a party of the Muslim faith. Dkt. No. 1, pg. 17 (Pg. ID 17). Plaintiff claims that granting

Mr. Makled's request established Islam as a favored religion. *See id.* Plaintiff also alleges that the Hijab Policy violates the Establishment Clause by favoring Islam over all other religions. *See id.*

To determine if government action violates the Establishment Clause, the Sixth Circuit uses the *Lemon* test, endorsement analysis, and may also consider history. *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 788 F.3d 580, 586–87 (6th Cir. 2015). Under the *Lemon* test, government action must have a secular legislative purpose, its primary effect cannot be to advance or inhibit religion, and it cannot foster an excessive entanglement with religion. *Id.* Under the endorsement analysis, the court asks if the government's purpose is to endorse or disapprove of religion. *Id.* at 587. The endorsement analysis is sometimes treated like a clarification of the *Lemon* test. *Id.* The historical inquiry tends to validate government acts where it is shown that a specific practice has been permitted throughout history. *See id.*

*Hijab Policy*

Under Count V, Plaintiff alleges the Hijab Policy violates the Establishment Clause because it specifically exempts Muslim women from the FOIA laws. Dkt. No. 1, pg. 17 (Pg. ID 17). As noted above, for this claim to be valid, Plaintiff must allege sufficient facts to satisfy the *Lemon*

or endorsement test. Plaintiff's complaint states, "[b]y making a policy specifically exempting only Muslim women from the FOIA laws, Defendants further violated the Establishment Clause by favoring one religion over all others." *Id.* This Court must determine if having a policy specifically exempting Muslim women from booking photos sans head coverings and/or FOIA requests of their photos without a head covering on plausibly violates the Establishment Clause.

### Primary Purpose

In determining the government's primary purpose, the Sixth Circuit typically gives deference to the government's stated reasons for taking the opposed action. *ACLU v. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2010). But the secular purpose must be genuine. *Id.* The Court takes an objective approach when considering why the objectionable government action was made. *ACLU of Ohio Found., Inc. v. DeWeese*, 633 F.3d 424, 430–35 (6th Cir. 2011).

The Hijab Policy was created in order to comply with the Religious Land Use and Institutionalized Persons Act. *See Kazan v. City of Dearborn Heights, et al.*, 15-cv-10250; Dkt. No. 9, pg. 14 (Pg. ID 147). Therefore, it was not created to promote Islam, but to accommodate the Islamic practice

of wearing a hijab or burka. Plaintiff has not alleged any other facts to support her claim that Defendants instituted the Hijab Policy for the primary purpose of promoting Islam.

*Endorsement*

The next prong of the *Lemon* test asks if the government action has the purpose or effect of endorsing religion. *ACLU v. Mercer Cty.*, 432 F.3d 624, 635 (6th Cir. 2005). Government action violates the Establishment Clause if a reasonable person would view the action as an endorsement of religion. *Id.* at 636. Courts within the Sixth Circuit have held prisons that eliminated pork and chicken from their meals, even when the prisons eliminated the meat after complaints by Muslim inmates, did not violate the Establishment Clause. *See Balcar v. Smith*, No. 3:16-cv-P428-DJH, 2017 WL 380931, at *6 (W.D. Ky. 2017); *Rivers v. Mohr*, No. 1:12-CV-00027, 2012 WL 1155101, at *1–2 (N.D. Ohio 2012). The court in *Balcar* held that several faiths prohibit the consumption of pork, so a reasonable person could not conclude that the meal change was an endorsement of Islam. *Balcar*, No. 3:16-cv-P428-DJH, 2017 WL 380931, at *6. Additionally, the court said, "the [state] has not become involved in the actual practice of a religion, nor is there any indication that it intends to take on a more active role in religious observations." *Id.*

In this case, Plaintiff's complaint states that the Hijab Policy specifically excludes Muslim women from the FOIA laws. Dkt. No. 1, pg. 17 (Pg. ID 17). Plaintiff's Exhibit G is a copy of the Hijab Policy, which states that it applies to females of the Muslim faith only. *See* Dkt. No. 1-7, pg. 2 (Pg. ID 44). It is clear that the Hijab Policy only applies to Muslims. This is unlike the elimination of meat in the prisons, which the *Balcar* court stated was not an endorsement of religion because other religions besides Islam do not eat pork. However, although the Hijab Policy only applies to Muslims, it cannot be said that the City has become involved in the actual practice of Islam by adopting the Hijab Policy. Nor does the Hijab Policy indicate that the City intends to take on a more active role in Islamic religious observations. The City only implemented the policy in June of 2015 after a Muslim woman filed a lawsuit against the City. *See Kazan v. City of Dearborn Heights, et al.*, 15-cv-10250; Dkt. No. 9, pg. 14 (Pg. ID 147). An objective person would not conclude the Hijab Policy is an endorsement of Islam. The City adopted the Hijab Policy in order to comply with the Religious Land Use and Institutionalized Persons Act only after someone filed a lawsuit.

*Entanglement*

Lastly, the *Lemon* test considers whether the government action fosters an excessive entanglement with religion. *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 788 F.3d 580, 586–87 (6th Cir. 2015). To determine if there is excessive entanglement, the Sixth Circuit looks at the institution that benefits from the action, the nature of what the state provides, and the resulting relationship between the government and the religious authority. *Johnson v. Dev. Corp. of Cty. Of Oakland*, 241 F.3d 501, 515 (6th Cir. 2001).

Here, the City's Hijab Policy is not excessively entangled with the Islamic faith. The City has not become involved in the actual practice of Islam. There is nothing to suggest the City is going to take a more active role in the Islamic religion. Plaintiff has not pled sufficient facts to show that the Hijab Policy constitutes excessive entanglement with religion. Further, the United States Supreme Court "has long recognized that the government may . . . accommodate religious practices . . . without violating the Establishment Clause." *Cutter v. Wilkinson*, 544 U.S. 709, 713 (2005).

In conclusion, Plaintiff has failed to plead facts sufficient to satisfy any of the prongs of the *Lemon* test or endorsement analysis. Therefore, her

Count V claim that the Hijab Policy violates the Establishment Clause must be dismissed against all Defendants.

In addition, Defendants Miotke, Paletko, and Gavin are immune from suit under the doctrine of qualified immunity. The Court must ask "whether the facts alleged or shown make out a violation of a constitutional right and whether the right at issue was clearly established as the time of the incident." *Id.* To be clearly established, "the case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Saylor v. Bd. Of Educ. Of Harlan Cty.*, 118 F.3d 507, 515 6th Cir. 1997)).

Here, the Court has found that Plaintiff did not allege facts sufficient to show the Hijab Policy is a violation of the Establishment Clause. The Hijab Policy also does not violate a clearly established right. There is no case law that addresses the Hijab Policy's constitutional validity. So case law does not dictate that the Hijab Policy violates federal law. The Court finds that the individual defendants are immune from suit for creating the Hijab Policy under the doctrine of qualified immunity.

*Partial Denial of Schlussel's FOIA Request*

Applying the *Lemon* test, Plaintiff fails to allege sufficient facts to support a plausible showing that granting Mr. Makled's FOIA request and denying in part her request constituted an establishment of religion. Plaintiff alleges no facts that tend to show that the City's acts had a religious purpose. Plaintiff alleges no facts that tend to show that the primary effect of the City's actions was to advance the Muslim faith and/or inhibit the Jewish faith. Plaintiff also alleges no facts to support a showing that granting Mr. Makled's request and denying in part her request fostered an excessive entanglement with religion. Plaintiff only repeatedly states in her complaint that Mr. Makled is a Muslim and that she is Jewish. In Count V of her complaint, Plaintiff states that "Defendants were and are aware that Schlussel is of the Jewish religion," and that "[b]y denying Schlussel the FOIA materials but granting them to a similarly situated party of another religion (Muslim), Defendants violated Schlussel's First Amendment Rights because Defendants established a favored religion . . . ." Dkt. No. 1, pg. 17 (Pg. ID 17). The fact that Defendants knew Schlussel is Jewish is not enough to establish a plausible Establishment Clause violation. The allegation that Defendants violated Plaintiff's rights because they established a favored religion is a conclusory statement not supported by any other facts in the

complaint. Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). Additionally, under the endorsement test, there are no facts that show Defendants were endorsing or disproving of religion by partially denying Plaintiff's request and granting Mr. Makled's request.

In conclusion, Plaintiff's allegation that Defendants' partial denial of her FOIA request constitutes an establishment of religion is dismissed against all Defendants for failure to allege facts sufficient to support a plausible claim.

The individual defendants are also immune from suit under qualified immunity. The Court has found that the partial denial of Plaintiff's FOIA request did not violate a constitutional right, that is, the Establishment Clause. Nor did the denial violate a clearly established right. There is no case law that addresses the scenario of whether a partial denial of a FOIA request violates the Establishment Clause where a city follows the Hijab Policy. The Court finds that this claim must be dismissed against the individual defendants under qualified immunity.

**Count VI**

Count VI alleges Defendants violated Plaintiff's freedom of speech by partially denying her FOIA request. Dkt. No. 1, pg. 19 (Pg. ID 19). "Free speech claims require a three-step inquiry." *Bible Believers v. Wayne County, Mich.*, 805 F.3d 228, 242 (6th Cir. 2015). First, the speech at issue must be constitutionally protected speech; second, the court examines the nature of the forum where the speech was made; and lastly, the court assesses if the government's action in shutting off the speech was legitimate. *See id.*

Here, Plaintiff does not allege any facts that she engaged in constitutionally protected speech. Plaintiff's complaint states, "Defendants were and are aware that Schlussel maintains a website and is a journalist whose work frequently appears in the media." Dkt. No. 1, pg. 19 (Pg. ID 19). However, Plaintiff does not allege specific facts about what type of speech she was attempting to engage in. Plaintiff alleges no facts to suggest her FOIA request was partially denied because of the speech she engaged in. Plaintiff's allegations in regards to this Count are conclusory and not sufficiently pled. Therefore, the Court dismisses Count VI as to all Defendants.

The individual defendants are also immune from suit under the doctrine of qualified immunity. The Court must ask "whether the facts alleged or shown make out a violation of a constitutional right and whether the right at issue was clearly established as the time of the incident." *Id.* To be clearly established, "the case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Saylor v. Bd. Of Educ. Of Harlan Cty.*, 118 F.3d 507, 515 6th Cir. 1997)).

Under this count, there was no violation of Plaintiff's free speech rights, as the Court discussed above. The right here was also not clearly established. Case law does not address whether the specific type of FOIA request Plaintiff made would violate free speech considering the Hijab Policy. There is no way that Defendants would be put on notice that their actions might violate free speech. Therefore, this count is also dismissed against the individual defendants under qualified immunity.

**Count VII**

Count VII alleges that denying Schlussel the FOIA materials but granting them to a similarly situated party of another religion, Islam, violated Plaintiff's First Amendment rights to worship as she desires and qualify to receive FOIA documents. Dkt. No. 1, pg. 20, (Pg. ID 20).

Under the Free Exercise Clause of the United States Constitution, the government cannot place a substantial burden on observation of a religious belief or practice. *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

Here, Plaintiff's complaint does not allege facts sufficient to find a violation of the Free Exercise Clause. The complaint does not state what type of substantial religious burden Plaintiff faced by being denied some of the information she requested.

Additionally, this Court held above that there is no plausible Equal Protection claim that Defendants denied Plaintiff's request because of her Jewish faith. Therefore, Plaintiff cannot plead facts sufficient to support a claim that the denial of information inhibits her from practicing her religion. This is because she cannot show that the partial denial of information was because of her religious beliefs.

In conclusion, the Court dismisses this action against all Defendants because Plaintiff has failed to plead sufficient facts.

Defendants Miotke, Paletko, and Gavin are also immune from suit under qualified immunity. Here, the Court has found that Defendants' actions did not violate the Free Exercise Clause. Defendants' actions also did not violate a clearly established right. It is not clearly established that the partial denial of Plaintiff's FOIA request was a violation of the Free Exercise Clause. Therefore, this Court finds that this Count should also be dismissed against the individual defendants because of qualified immunity.

In summary, the Court dismisses all of Plaintiff's federal law claims with prejudice. Plaintiff has failed to plead sufficient facts and the individual defendants cannot be sued under the doctrine of qualified immunity.

**State Law Claims**

**Counts I, IV, VIII and IX**

Counts I, IV, VIII, and IX are all state law claims. Count I alleges that Defendant City of Dearborn Heights violated the Michigan Freedom of Information Act by denying her some of the information she requested. Plaintiff also alleges that the Hijab Policy enacted by the City violates the Michigan FOIA. Count IV alleges that the defendants violated the Michigan

Elliott-Larsen Civil Rights Act. Dkt. No. 1, pg. 15 (Pg. ID 15). Counts VIII and IX allege violations of the Equal Protection Clause of the Michigan Constitution. Dkt. No. 1, pg. 21–23 (Pg. ID 21–23). Defendants assert that this Court should refuse to exercise supplemental jurisdiction over these claims.

Pursuant to 28 U.S.C. § 1367, district courts may exercise supplemental jurisdiction over state law claims. However, "supplemental jurisdiction is discretionary, not mandatory." *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011). A district court may decline to exercise supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of state law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
>
> 28 U.S.C. § 1367(c); *Hucul Advert., LLC v. Charter Twp. Of Gaines*, 748 F.3d 273, 281 (6th Cir. 2014).

This Court has previously refused to exercise supplemental jurisdiction over Michigan FOIA claims. *See Parsons v. Caruso*, No. 07-13335, 2008 WL 700206, at *2 (E.D. Mich. 2008). Additionally, these claims raise the novel issue of whether refusing to release booking photographs of Muslim women

sans head scarf violates the Michigan FOIA, Michigan Elliott-Larsen Civil Rights Act, and the Michigan Constitution. These issues are matters of first impression in the Michigan courts. Michigan courts are best suited to decide these claims. Therefore, this Court refuses to exercise supplemental jurisdiction over Plaintiff's Counts I, IV, VIII, and IX. The Court dismisses these counts without prejudice.

## V. CONCLUSION

For the reasons discussed herein, the Court will grant Defendant Miotke's and Defendants Paletko, Gavin, City of Dearborn Heights, and Dearborn Heights Police Department's Motions to Dismiss. Counts one, four, eight, and nine are dismissed without prejudice. Counts two, three, five, six, and seven are dismissed with prejudice.

**IT IS SO ORDERED.**


/s/Gershwin A Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICTJUDGE

Dated: October 11, 2017